UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SHERRY F., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-00023-TWP-DML |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[1] | ) ) ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Sherry F.[2] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying her application for Disability Insurance Benefits under the Social Security Act. For the following reasons, the Court **affirms** the decision of the Commissioner.

### I.  PROCEDURAL BACKGROUND

On May 23, 2019, Sherry F. filed an application for Disability Insurance Benefits, alleging a disability onset date of May 5, 2018. (Filing No. 17-2 at 16.) Her application was initially denied on August 1, 2019, (Filing No. 17-4 at 2), and upon reconsideration on November 22, 2019, (Filing No. 17-4 at 10). Administrative Law Judge Cristen Meadows (the "ALJ") conducted a hearing via telephone on July 17, 2020, due to the coronavirus pandemic, in which Sherry F., represented by counsel, and a vocational expert ("VE") participated and testified. (Filing No. 17-2 at 33-67.) The

---

[1] On July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

[2] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

ALJ issued a decision on September 16, 2020, concluding that Sherry F. was not entitled to benefits. (Filing No. 17-2 at 13-26.) The Appeals Council denied review on December 4, 2020. (Filing No. 17-2 at 2.) On February 4, 2021, Sherry F. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner. (Filing No. 1.)

## II.     STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of

impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite her mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at

1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.  FACTUAL BACKGROUND

When Sherry F. filed her application, she alleged that she could no longer work because of severe rheumatoid arthritis. (Filing No. 17-6 at 5.) She was 52 years old when her alleged disability began. (Filing No. 17-5 at 2.) Sherry F. had completed high school and a computer course offered by a university. (Filing No. 17-6 at 6.) She had worked as retail stocker. (Filing No. 17-6 at 6-7.) The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Sherry F. was not disabled. (Filing No. 17-2 at 26.) At step one, the ALJ found that Sherry F. had not engaged in substantial gainful activity[3] since May 5, 2018, the alleged onset date. (Filing No. 17-2 at 18.) At step two, the ALJ found that Sherry F. had "the following severe impairments: rheumatoid arthritis (RA), bilateral rotator cuff syndrome, and fibromyalgia." (Filing No. 17-2 at 19 (citation omitted).) At step three, the ALJ found that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 17-2 at 20.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to wetness, and have no exposure to hazards of unprotected heights or dangerous moving machinery. The claimant can occasionally reach overhead with the bilateral upper extremities. The claimant can frequently handle and finger with the bilateral upper extremities.

(Filing No. 17-2 at 21.) At step four, the ALJ found, considering the VE's testimony and Sherry F.'s RFC, that she could not perform her past relevant work as a retail stocker. (Filing No. 17-2 at 24-25.) At step five, the ALJ found considering the VE's testimony and Sherry F.'s age, education, work experience, and RFC that she could have performed other work with jobs existing in significant numbers in the national economy in representative occupations like a weights measure checker clerk and counter clerk. (Filing No. 17-2 at 25-26.)

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

## IV.     DISCUSSION

Sherry F. makes a single assertion of error that the ALJ relied on the stale assessments of the stage agency reviewing consultants and failed to submit complex medical imaging and clinical testing to expert review before she assessed Sherry F.'s RFC. (Filing No. 24 at 7-13.)

The Seventh Circuit has explained that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment") (additional citation omitted)). The Seventh Circuit has also "said repeatedly that an ALJ may not 'play[] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ruling that the ALJ erred in failing to submit the claimant's first MRI in 11 years to medical scrutiny and in interpreting the results himself). "An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." *McHenry*, 911 F. 3d at 871 (quoting *Akin v. Berryhill,* 887 F.3d 314, 317-18 (7th Cir. 2018)).

The most recent prior administrative medical finding occurred on November 21, 2019. (Filing No. 17-3 at 22.) The verbatim assessments of the state agency medical consultants included that Sherry F. could lift and carry 20 pounds occasionally, 10 pounds frequently, and stand and walk about six hours in an eight-hour workday. (Filing No. 17-3 at 8-10; Filing No. 17-3 at 20-22.) The ALJ found that the medical consultants' assessments were persuasive. (Filing No. 17-2 at 24). Although the ALJ explained that she assessed additional manipulative limitations based on

Sherry F.'s reports of increased pain in her shoulders and an examination demonstrating bilateral shoulder impingement. *Id*.

Sherry F. contends that the consultants' assessments were stale because they were made "prior to x-rays or even complaints of lumbar and cervical spine etiology, complaints of bilateral shoulder pain and diagnosis of rotator cuff syndrome, and a left foot x-ray being submitted into the administrative record." (Filing No. 24 at 7.) She also contends that the x-ray of her foot showed "evidence of advancement of rheumatoid arthritis." *Id*.

Sherry F. testified that she had pain in all her joints, as well as severe pain in her back and neck for which she was getting chiropractic treatment. (Filing No. 17-2 at 42.) She estimated that she could walk around for only 15 minutes before needing to sit down. (Filing No. 17-2 at 44-45.) The VE testified that Sherry F. did not have any skills from her past relevant work that were transferable to sedentary work. (Filing No. 17-2 at 64.) If she were limited to sedentary exertional work, based on her age, education, and work experience, the Medical-Vocational Guidelines would direct that she be found "[d]isabled." *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 2, Rule 201.14. By regulation:

> Light work involves lifting no more than 20 pounds at a time with frequent[4] lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). By contrast:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally[5] lifting or carrying articles like docket files, ledgers, and small tools. Although a

---

[4] "'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *6.

[5] "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than

>sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id*. at 404.1567(a). An evaluation of whether Sherry F. had the capacity to stand, walk, lift, and carry consistent with the consultants' assessments—and the ALJ's corresponding RFC finding that she was capable of a range of light exertional work—is a material consideration.

An ALJ may properly rely on an outdated assessment when diagnostic "evidence postdating the state agency consultant's report show[s] only mild changes in the claimants' respective conditions." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021), *as amended on reh'g in part* (June 21, 2021) (citing *Keys v. Berryhill*, 679 F. App'x 477 (7th Cir. 2017); *Olsen v. Colvin*, 551 F. App'x 868 (7th Cir. 2014)). The Court must consider "whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Id*. The SSA's guidance also explains that individuals may subjectively experience pain differently even with the same objective severity demonstrated by diagnostic imaging. *See* SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *4. Accordingly, to evaluate prejudice, the Court must also consider whether objective diagnostic evidence that was not submitted to expert scrutiny is "corroborated by other evidence" supportive of additional functional limitations. *See Kemplen*, 844 F. App'x at 887.

The ALJ considered Sherry F.'s allegations that her rheumatoid arthritis ("RA") "purportedly limit[ed] her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, and use her hands." (Filing No. 17-2 at 22 (citation omitted).) The ALJ also explained:

>The claimant indicated increased pain in her bilateral shoulders, with the feeling that they are "stretching apart inside of them" (Exhibits 7F p.4; 12F p.5). The physical exam showed no synovitis of any joint of the upper or lower extremities bilaterally, bilateral shoulder impingement, and a fair range of motion throughout,

---

about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5.

8

>including in the shoulders (Exhibit 7F p.6).  The claimant's RA was described as mild with no synovitis on exam, and ongoing pain that is worse prior to taking [H]umira.  Additionally, she was diagnosed with bilateral rotator cuff syndrome and fibromyalgia.

(Filing No. 17-2 at 23 (duplicative citations omitted).)  State agency consultants are presumed to have considered the evidence that was in the record at the time of their reviews.  *See Scheck v. Barnhart*, 357 F.3d 697, 700–01 (7th Cir. 2004).  At the reconsideration stage, the record included the treatment evidence that ALJ cited demonstrating bilateral rotator cuff syndrome.  (*Compare* Filing No. 17-3 at 14-16 (evidence at reconsideration including from UC Health received on November 18, 2019) *with* Filing No. 17-1 at 2-3 (medical exhibits including 7F from UC Health covering treatment between July 12, 2019 and September 3, 2019).)  The consultant found that Sherry F.'s only severe impairment was inflammatory arthritis.  (Filing No. 17-3 at 18.)  However, as explained above, the ALJ concluded that the evidence demonstrated that Sherry F.'s bilateral rotator cuff syndrome was a severe impairment that caused additional manipulative limitations.  The ALJ's RFC "finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [Sherry F.] presented."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  Sherry F. has not demonstrated prejudice based on the evidence of her shoulder impairments.

On June 11, 2020, Sherry F. had an initial visit with a Craig W. George, D.C. ("Chiropractor George") (Filing No. 17-8 at 172).  Her "chief complaint" was low back and leg pain. *Id*.  She reported that the onset was "sudden" about three months prior. *Id*.  She also reported that the pain was aggravated by "any activity" and relieved by sitting and stretching. *Id*.  Sherry F. also reported secondary shoulder and neck pain that was aggravated by any activity. *Id*.  Chiropractor George's examination "reveal[ed] areas of spasm, hypomobility and end point tenderness indicative of subluxation at C1, C2, C6, C7, T2, T3, L5, [around her] sacrum and right

9

pelvis." *Id*. Chiropractor George also recorded his interpretation of radiological studies that were taken that day. *Id*. at 175. His conclusions included that the x-rays showed disc space narrowing at C4-5, facet arthropathy at C3-4, C4-5, and C5-6, moderate dextroscoliosis[6] at L1, and a rotated ilium to the right. *Id*. Chiropractor George also recorded relevant clinical signs that Sherry F. had decreased ranges of motion throughout her cervical and lumbar spine, positive bilateral Patrick's tests, positive Kemp's tests, and positive iliac compression tests. *Id*. at 145. The form also appears to record reduced muscle strength, perhaps to the right, at L5-S1.[7] *Id*. None of the Chiropractor George's findings were submitted to medical scrutiny.

The ALJ did not expressly address Chiropractor George's findings. The ALJ also did not address whether Sherry F. had a medically determinable spine impairment. But by regulation:

> [A claimant's] impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. *Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.* [The SSA] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. § 404.1521 (emphasis added). The SSA does not recognize chiropractors as an acceptable medical source. 20 C.F.R. § 404.1502(a). Accordingly, Chiropractor George's findings cannot establish any medically determinable lumbar or cervical spine impairments. And there is no evidence that the x-ray imaging that was taken in his office was interpreted by a radiologist or an acceptable medical source.

On March 6, 2020, Sherry F.'s treating rheumatologist, Guarav Gulati, M.D. ("Dr. Gulati"), recorded that she had positive lower lumbar paraspinal tenderness on examination. (Filing No.

---

[6] Dextroscoliosis is an abnormal spinal curvature to the right. Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/24193-levoscoliosis--dextroscoliosis (last visited September 29, 2022).

[7] Sherry F.'s provider wrote "R" in the blanks for L5 and S1 rather that a number corresponding to the scale described on the examination form. (Filing No. 17-8 at 174.)

17-8 at 264.) Dr. Gulati explained that Sherry F.'s low back pain "seem[ed] to be related to [a] potential musculoskeletal cause," possibly piriformis syndrome.[8] (Filing No. 17-8 at 265.) On July 24, 2020, Dr. Gulati noted that Sherry F. reported "[l]ow back pain travels to legs, seen by chiropractor and it helps, 5/10, worse with use, better with chiropractor[.]" (Filing No. 17-8 at 271.) Dr. Gulati also explained that muscle relaxers helped, but Sherry F. would need a referral for evaluation of back injections if the conservative measures failed. (Filing No. 17-8 at 277.) Dr. Gulati's examination recorded "[n]o spinal tenderness." (Filing No. 17-8 at 276.) And Dr. Gulati's relevant diagnoses included RA in multiple joints and only "[c]hronic low back pain, unspecified back pain laterality, unspecified whether sciatica present." *Id.* According to Dr. Gulati, there was not any definitive evidence of a relevant medically determinable impairment, and there was no further development of one in the record. Accordingly, there was not significant objective medical evidence from an acceptable medical source of a cervical or lumbar spine impairment to submit to medical scrutiny.

The Seventh Circuit has also explained that "an ALJ doesn't need to address every piece of evidence, but . . . she can't ignore a line of evidence supporting a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). The ALJ summarized the evidence that postdated the consultants' reviews, including Sherry F.'s rheumatology treatment:

> On March 6, 2020, the claimant went to UC for follow-up for her RA; she reported having more back pain that radiated into both her thighs that worsened when sitting for long periods of time. She described her pain as 8/10, though with morning stiffness being minimal, and she continued to tolerate her medications without significant issues. The physical exam showed lower lumber tenderness, negative straight leg raise, normal range of motion of the small joints, 5/5 muscle strength of the upper and lower extremities, but she had a positive forefoot squeeze test with

---

[8] "Piriformis syndrome causes pain or numbness in your butt, hip or upper leg. It occurs when the piriformis muscle presses on the sciatic nerve. The condition may be caused by injury, swelling, muscle spasms or scar tissue in the piriformis. Most episodes go away in a few days or weeks with rest and simple treatments." Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/23495-piriformis-syndrome (last visited September 29, 2020).

> tenderness.  Medical records noted that overall, her RA and fibromyalgia seemed stable with no active synovitis and she was given [R]obaxin for her back pain.
>
> On July 24, 2020, the claimant went for a RA follow-up, where she reported her low back pain was 5/10 which got better with chiropractic help, she indicated her hands "lock", however, she had no joint swelling, had no major flares, and she felt her RA was controlled.  Treatment notes indicated her RA was overall controlled with no flares and her back pain and fibromyalgia [were] better on muscle relaxers.

(Filing No. 17-2 at 23 (citations omitted).)  The ALJ considered the line of evidence concerning Sherry F.'s allegations of back pain, which could also be related to her RA.  But the ALJ explained that the record showed that Sherry F. reported that her RA was controlled, and her back pain had so far improved with conservative measures.  The ALJ did not need expert support to consider the updated evidence of Sherry F.'s statements concerning her subjective symptoms.  And Sherry F. has not asserted that the ALJ's evaluation of her subjective statements was patently wrong.

      The ALJ also considered the line of evidence concerning Sherry F.'s foot pain, including examination findings that she had a positive forefoot squeeze test and tenderness.  Dr. Gulati recorded findings that an examination of Sherry F.'s right foot revealed a positive forefoot squeeze test and metatarsophalangeal tenderness, and her left foot had swelling and erythema of the fourth toe.  (Filing No. 17-8 at 276.)  Dr. Gulati ordered an x-ray of her left foot.  *Id*.  Sherry F. had reported pain and swelling in her left fourth toe after she bumped it into an ottoman two weeks before.  (Filing No. 17-8 at 271.)  The x-ray of Sherry F.'s left foot was taken on July 24, 2020, and compared with a previous study on January 4, 2016.  (Filing No. 17-8 at 292).  The imaging did not show any acute fracture and soft tissue was unremarkable.  *Id*.  The imaging did show a "[q]uestionable tiny erosion involving the second proximal phalanx, less conspicuous than on the prior study.  No new erosive changes." *Id*.  Contrary to Sherry F.'s contention, the updated imaging showed improvement rather than progression of her arthritis.  Moreover, the relevant finding was incidental in the context of a foot injury.  And again, the ALJ considered Sherry F.'s report that

12

her RA was controlled. In context, the Court concludes that the x-ray imaging of Sherry F.'s left foot was minor enough that it did not compel further expert review or even express consideration by the ALJ. Accordingly, Sherry F. has not demonstrated that the ALJ erred by relying on the consultants' prior administrative medical findings.

## V. CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision. The final decision of the Commissioner is **AFFIRMED**. Sherry F.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date: 9/30/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Lori M. Craig
KELLER & KELLER
lcraig@2keller.com

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Matthew Frederick Richter
KELLER & KELLER
mrichter@2keller.com

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov